UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SIMON AND SIMON, PC d/b/a CITY SMILES, individually and on behalf of all others similarly situated,<br><br>      Plaintiff,<br><br>v.<br><br>ALIGN TECHNOLOGY,<br><br>      Defendant. | Civil Action No. 19-506-LPS |

**PLAINTIFF'S ANSWERING BRIEF IN OPPOSITION TO DEFENDANT'S MOTION
TO DISMISS OR IN THE ALTERNATIVE TRANSFER**

OF COUNSEL:
John Radice
Daniel Rubenstein
Natasha Fernandez-Sibler
Rishi Raithatha
RADICE LAW FIRM, P.C.
475 Wall Street
Princeton, NJ 08540
(646) 245-8502

Eric L. Cramer
BERGER MONTAGUE PC
1818 Market Street, Suite 3600
Philadelphia, PA 19103
(215) 875-4604

Daniel J. Walker
BERGER MONTAGUE PC
2001 Pennsylvania Ave, NW
Suite 300
Washington, DC 20006
(202) 559-9745

April 26, 2019

Jeffrey S. Goddess (No. 630)
Jessica Zeldin (No. 3558)
P. Bradford Deleeuw (No. 3569)
ROSENTHAL, MONHAIT & GODDESS, P.A.
919 N. Market Street, Suite 1401
P.O. Box 1070
Wilmington, DE 19899-1070
(302) 656-4433
jgoddess@rmgglaw.com
jzeldin@rmgglaw.com
bdeleeuw@rmgglaw.com

*Counsel for Plaintiff Simon and Simon, PC
d/b/a City Smiles and the Proposed Class*

## TABLE OF CONTENTS

**Page No.**

I.   NATURE AND STAGE OF PROCEEDINGS ....................................................1

II.  SUMMARY OF ARGUMENT ........................................................................1

III. STATEMENT OF FACTS ..............................................................................3

IV.  ARGUMENT ................................................................................................4

     A.    Legal Standard ......................................................................................4

     B.    City Smiles Alleges Valid Sherman Act Section 2 Claims. ...................5

          1.    Align has monopoly power in the Scanner and Aligner markets. .............5

               a.    City Smiles alleges ample direct evidence of monopoly power........................................................................................7

               b.    City Smiles alleges ample indirect evidence of monopoly power........................................................................................7

                    (1)    Other scanners and silicone molds are neither functional nor economic substitutes for Scanners such as Trios and iTero. ......................................................7

                    (2)    Traditional wire braces are neither functional nor economic substitutes for Aligners.......................................8

          2.    Align engaged in anticompetitive, exclusionary conduct. ..........................9

               a.    Monopoly leveraging is well-recognized exclusionary conduct.........................................................................................11

               b.    Align's "closed system" of Aligners and Scanners is exclusionary. ....................................................................................12

                     (1)    Count I: Align leveraged Scanner monopoly power to maintain and enhance Aligner monopoly power. ..........12

                    (2)    Count Two: Align leveraged Aligner monopoly power to maintain and enhance Scanner monopoly power................................................................................13

               c.    Align's bundle is exclusionary.......................................................16

          3.    Align's conduct harmed consumer welfare. ...............................................17

C.      This Court Is the Correct Forum..........................................................................17

V.      CONCLUSION.............................................................................................................20

## TABLE OF AUTHORITIES

**Cases**                                                                    **Page No(s)**

*Abbott Labs. v. Teva Pharms. USA, Inc.*,
   432 F. Supp. 2d 408 (D. Del. 2006) .......................................................................... 14

*Advo, Inc. v. Philadelphia Newspapers.*,
   51 F.3d 1191 (3d Cir. 1995) .................................................................................... 11

*AlliedSignal, Inc. v. B.F. Goodrich Co.*,
   183 F.3d 568 (7th Cir. 1999) .................................................................................. 18

*Am. Airlines, Inc. v. Travelport Ltd.*,
   2011 WL 3290366 (N.D. Tex. Jul. 26, 2011) .......................................................... 17

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ................................................................................................. 4

*Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*,
   472 U.S 585 (1985) ................................................................................................ 15

*Atl. Marine Constr. Co. v. U.S. Dist. Court for the W. Dist. of Tex.*,
   571 U.S. 49 (2013) ................................................................................................ 18

*Bense v. Interstate Battery Sys. of Am.*,
   683 F.2d 718 (2d Cir. 1982) ................................................................................... 19

*Bradburn Parent/Teacher Store, Inc. v. 3M*,
   2000 WL 34003597 (E.D. Pa. Jul. 25, 2003) .......................................................... 17

*Broadcom Corp. v. Qualcomm Inc.*,
   501 F.3d 297 (3d Cir. 2007) ........................................................................... 5, 7, 15

*Brown Shoe Co. v. United States*,
   370 U.S. 294 (1962) ............................................................................................ 6, 9

*CAE Inc. v. Gulfstream Aerospace Corporation*,
   203 F. Supp. 3d 447 (D. Del. 2016) ......................................................................... 9

*CardioNet, Inc. v. Cigna Health Corp.*,
   751 F.3d 165 (3d Cir. 2014) ................................................................................... 17

*Castro v. Sanofi Pasteur Inc.*,
   134 F. Supp. 3d 820 (D.N.J. 2015) .................................................................... 10, 17

*Cont'l Ore Co. v. Union Carbide & Carbon Corp.*,
   370 U.S. 690 (1962) .............................................................................................. 13

*Covad Comms. Co. v. Bell Atlantic Corp.*,
   398 F.3d 666 (D.C. Cir. 2005) ...................................................................... 15

*Delaware Health Care v. MCD Holding Co.*,
   893 F. Supp. 1279 (D. Del. 1995) ............................................................ 11, 12

*E. I. du Pont de Nemours & Co. v. Kolon Indus.*,
   637 F.3d 435 (4th Cir. 2011) ......................................................................... 6

*Eastman Kodak Co. v. Image Technical Servs., Inc.*,
   504 U.S. 451 (1992) ...................................................................................... 10

*Eisai Inc. v. Sanofi Aventis U.S., LLC*,
   821 F.3d 394 (3d Cir. 2016) .......................................................................... 16

*Fineman v. Armstrong World Industries, Inc.*,
   980 F.2d 171 (3d Cir. 1992) ..................................................................... 10, 11

*Flovac, Inc. v. Airvac, Inc.*,
   817 F.3d 849 (1st Cir. 2016) .......................................................................... 6

*Fowler v. UPMC Shadyside*,
   578 F.3d 203 (3d Cir. 2009) ............................................................................ 4

*FTC v. H.J. Heinz Co.*,
   246 F.3d 708 (D.C. Cir. 2001) ........................................................................ 6

*Gen. Envtl. Sci. Corp. v. Horsfall*,
   753 F. Supp. 664 (N.D. Ohio 1990) .............................................................. 18

*GN Netcom Inc. v. Plantronics, Inc.*,
   967 F. Supp. 2d 1082 (D. Del 2013) ............................................................... 4

*Gorlick Distrib. Ctrs., LLC v. Car Sound Exhaust Sys., Inc.*,
   723 F.3d 1019 (9th Cir. 2013) ......................................................................... 6

*Gulfstream III Assocs., Inc. v. Gulfstream Aerospace Corp.*,
   995 F.2d 425 (3d Cir. 1993) .......................................................................... 17

*Hewlett-Packard Co. v. Arch Assocs. Corp.*,
   908 F. Supp. 265 (E.D. Pa. 1995) ......................................................... 10, 11, 14

*In re Keurig Green Mountain Single Serve Coffee Antitrust Litig.*,
   2019 WL 1789789 (S.D.N.Y. Apr. 22, 2019) ................................................ 14

*In re Nexium (Esomeprazole) Antitrust Litig.*,
   968 F. Supp. 2d 367 (D. Mass. 2013) .............................................................. 6

*In re Nexium Antitrust Litig.*,
  777 F.3d 9 (1st Cir. 2015) ................................................................................ 18

*In re Titanium Dioxide Antitrust Litig.*,
  962 F. Supp. 2d 840 (D. Md. 2013) ............................................................. 18, 19

*In re Warfarin Sodium Antitrust Litig.*,
  391 F.3d 516 (3d Cir. 2004) ........................................................................... 19

*IQVIA Inc. v. Veeva Systems Inc.*,
  2018 WL 4815547 (D.N.J. Oct. 3, 2018) .................................................. passim

*J.R.S., Inc. v. Panduit Corp.*,
  2009 WL 37601 (N.D. Okla. Jan. 6, 2009) ..................................................... 17

*LePage's, Inc. v. 3M*,
  324 F.3d 141 (3d Cir. 2003) ................................................................... *passim*

*Lifewatch Servs v. Highmark*,
  902 F.3d 323 (3d Cir. 2018) ............................................................................. 9

*Loestrin 24 Fe*,
  261 F. Supp. 3d 307 (D.R.I. 2017) .................................................................... 6

*Maia v. Aetna, Inc.*,
  221 F.3d 472 (3d Cir. 2000) ............................................................................. 4

*Mylan Pharms. Inc. v. Warner Chilcott Pub. Ltd. Co.*,
  838 F.3d 421 (3d Cir. 2016) ......................................................................... 5, 7

*New York ex rel. Schneiderman v. Actavis PLC*,
  787 F.3d 638 (2d Cir. 2015) ........................................................................... 14

*Pfizer Inc. v. Johnson & Johnson*,
  333 F. Supp. 3d 494 (E.D. Pa. 2018) ............................................................... 5

*Reading Health Sys. v. Bear Stearns & Co.*,
  900 F.3d 87 (3d Cir. 2018) ........................................................................ 18, 19

*Rochester Drug Coop. v. Braintree Labs.*,
  712 F. Supp. 2d 308 (D. Del. 2010) ............................................................... 13

*SmithKline Corp. v. Eli Lilly & Co.*,
  575 F.2d 1056 (3d Cir. 1978) ...................................................................... 6, 10

*Syncsort Inc. v. Innovative Routines Intern.*,
  2005 WL 1076043 (D.N.J. May 6, 2005) .................................................. 10, 11

v

*Verizon Comm'ns v. Law Offices of Curtis V. Trinko,*
540 U.S. 398 (2004) ................................................................................................... 15

*United States v. Dentsply Int'l, Inc.,*
399 F.3d 181 (3d Cir. 2005) ........................................................................................ 7

*United States v. Grinnell Corp.,*
384 U.S. 563 (1966) ..................................................................................................... 5

*United States v. Microsoft Corp.,*
253 F.3d 34 (D.C. Cir. 2001) ..................................................................................... 14

*Valspar v. E.I. DuPont de Nemours and Co.,*
15 F. Supp. 3d 928 (D. Minn. 2014) .......................................................................... 19

*W. Penn Allegheny Health Sys., Inc. v. UPMC,*
627 F.3d 85 (3d Cir. 2010) ..................................................................................... 5, 10

*Weiss v. York Hosp.,*
745 F.2d 786 (3d Cir. 1984) ......................................................................................... 6

*Wexler v. AT&T Corp.,*
211 F. Supp. 3d 500 (E.D.N.Y. 2016) ....................................................................... 19

*Xiao Wei Yang Catering Linkage in Inner Mongolia Co., LTD. v. Inner*
*Mongolia Xiao Wei Yang USA, Inc.,* 150 F. Supp. 3d 71 (D. Mass. 2015) ............. 17

*Yeager's Fuel, Inc. v. Penn. Power & Light Co.,*
953 F. Supp. 617 (E.D. Pa. 1997) ........................................................................ 11, 13

**OTHER AUTHORITIES**:

Am. Bar Ass'n, *Model Jury Instructions in Civil Antitrust Cases* (2016),
Ch. 1, Instruction *A-4* ................................................................................................. 6

Department of Justice (DOJ) and Federal Trade Commission (FTC),
*Horizontal Merger Guidelines § 1.11* (Aug. 9, 2010) ................................................ 6

## I.     NATURE AND STAGE OF PROCEEDINGS

Plaintiff Simon and Simon, PC d/b/a City Smiles ("City Smiles") submits this brief in opposition to Defendant Align Technology, Inc.'s ("Align") Motion to Dismiss or in the Alternative to Transfer (D.I. 6).

## II.     SUMMARY OF ARGUMENT

City Smiles alleges, on behalf of a proposed class of similarly situated dental practices, that Align, the dominant seller of plastic aligners for straightening teeth, engaged in a scheme to monopolize two separate products markets: (1) "the market for hand-held digital intra-oral scanners used to generate scans to order Aligners" ("**Scanners**") (D.I. 1 ¶ 91); and (2) "the market for custom-manufactured, transparent, removable dental aligners made from clear plastic or similar materials" ("**Aligners**") (D.I. 1 ¶ 85). Align has greater than 80% share of each market.

City Smiles brings two claims under Section 2 of the Sherman Act: **Count I**, that Align has leveraged its dominant position in the Scanner market to suppress competition in the Aligner market (D.I. 1 ¶ 104-113), and **Count II**, that Align has leveraged its dominant position in the Aligner market to suppress competition in the Scanner market. (D.I. 1 ¶ 114-123).

City Smiles alleges in specific detail that Align engaged in a scheme to bundle its Aligners and Scanners by configuring those products to render it burdensome and impracticable to use Scanners or Aligners from actual or potential rivals. When Align finally faced the prospect of effective competition in the Aligner market due to the expiration of key patents, Align sought to block that competition by entering into an exclusive agreement with 3Shape, who sells the only true rival Scanner. When 3Shape refused, Align terminated its interoperability agreement, ending 3Shape's customers' ability to use a Scanner to order Aligners and impairing 3Shape's ability to compete in the Scanner market. Align did so *even though terminating the long-standing*

1

*relationship with 3Shape would reduce its ability to sell Aligners to 3Shape customers, and thereby sacrifice Align's own short-term profits*. But Align knew that 3Shape's Scanner offered a critical point of market entry for competing Aligners and that terminating the agreement would reinforce Align's monopoly power in the Aligner market even after its key patents expired. The scheme enabled Align to maintain monopoly power in the Aligner and Scanner markets and artificially inflate prices. These allegations state Sherman Act § 2 claims.

For its part, Align first contends that City Smiles has not sufficiently alleged monopoly power in the Aligner and Scanner markets because certain other products with similar uses must be included in those markets. (D.I. 6 at 13-17.) Align is wrong. The Complaint alleges "direct evidence" of monopoly power, in the form of supracompetitive prices and reduced output, which is sufficient on its own. (D.I. 1 ¶¶ 13, 77, 84, 90.) Additionally, products in the same market must be *economic* substitutes, meaning that they constrain each other's prices, not simply functional substitutes. The Complaint amply alleges why these additional products are neither functional nor economic substitutes (D.I. 1 ¶¶ 17, 50, 68, 88-89, 95, 97), and Align's factual arguments to the contrary are not appropriate on a motion to dismiss.

Second, Align contends that monopoly leveraging is a theory "long discarded by the Third Circuit," (D.I. 6 at 9-10) and that City Smiles purportedly fails to allege exclusionary conduct (D.I. 6 at 10-12). Align is wrong. Monopoly leveraging is alive and well in the Third Circuit (and elsewhere).[1] The Complaint's allegations of exclusionary conduct—including configuring its products to create an exclusionary product bundle, and terminating a profitable relationship with a rival—are well recognized forms of exclusionary conduct.

---

[1] *See, e.g., IQVIA Inc. v. Veeva Systems Inc.*, No. 17-cv-00177, 2018 WL 4815547 (D.N.J. Oct. 3, 2018) (upholding monopoly leveraging claim).

Third, Align asserts that a forum selection clause in the Scanner purchaser agreement requires transfer of these claims. (D.I. 6 at 18-20.) Not so. The antitrust claims here are beyond the scope of the forum selection clause, do not arise from the Scanner purchase agreement, and do not require interpretation of that agreement. Judicial economy would be best served by proceeding here, where Align is already defending a related action.

## III.    STATEMENT OF FACTS

Align sells the market dominant Aligners (Invisalign), and the market dominant Scanner (iTero). (D.I. 1 ¶ 1.) Align earns high gross profit margins on both (approximately 78% on Invisalign and approximately 60% on iTero). (D.I. 1 ¶ 42.) As of September 2018, Align controls over 80% of both the Scanner and Aligner markets. (D.I. 1 ¶ 67.)

The iTero Scanner is a *de facto* "closed system," configured to send digital scans directly to Align. (D.I. 1 ¶ 52.) When a dental practice with an iTero seeks to order Aligners from another manufacturer, it must pay fees to Align and undergo a file-conversion process that takes longer and results in lower resolution scans. (*Id.*) Align imposes these burdensome and commercially unreasonable terms to ensure that dental practices with iTero Scanners order Invisalign. (*Id.*)

Align's leveraging scheme has enhanced its monopoly power over Scanners and Aligners. (D.I. 1 ¶ 68.) Dentists are much less likely to order a Scanner that cannot readily be used to order the market-dominant Invisalign Aligner. (*Id.*) Align also refuses to accept industry standard STL files to order Invisalign. (D.I. 1 ¶ 53, 80.) Moreover, digital scanners other than 3Shape's Scanner are not suitable for ordering Aligners, and silicone molds are a burdensome, inefficient, and inferior alternative. (D.I. 1 ¶ 68.)

Invisalign is, by far, Align's most profitable and lucrative product. (D.I. 1 ¶ 4.) Facing patent expiration and the onset of competition for Invisalign, Align sought to block access to the Aligner market by entering into an exclusive agreement with 3Shape, under which 3Shape would

disable its Scanner and prohibit it from sending images to manufacturers of competing Aligners. (D.I. 1 ¶¶ 8, 12-15.) 3Shape refused, and in retaliation, Align terminated 3Shape's interoperability agreement—and with it a long-standing, profitable relationship. (D.I. 1 ¶¶ 15-16.) Since only Align's iTero Scanner can order Invisalign Aligners under commercially reasonable terms, and since owners of iTero Scanners can order only Invisalign under commercially reasonable terms, iTero and Invisalign have become the only reasonable choices, (D.I. 1 ¶¶ 68-69), leading to artificially inflated prices for these products and harming Class members and consumer welfare. (D.I. 1 ¶¶ 82-83).

## IV.    ARGUMENT

### A.    Legal Standard

In deciding a Rule 12(b)(6) motion to dismiss, the Court first "separates the factual and legal elements of a claim, accepting 'all of the complaint's well-pleaded facts as true, but [disregarding] any legal conclusions.'"[2] The second step requires the Court to "draw all reasonable inferences in favor of the non-moving party."[3] Third, "the Court must determine 'whether the facts alleged in the complaint are sufficient to show that the plaintiff has a plausible claim for relief.'" *GN Netcom*, 967 F. Supp. 2d at 1084 (quotations omitted). "When the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," the claim is plausible.[4]

---

[2] *GN Netcom Inc. v. Plantronics, Inc.*, 967 F. Supp. 2d 1082, 1084 (D. Del 2013) (Stark, J.) (quoting *Fowler v. UPMC Shadyside*, 578 F.3d 203 at 210-211 (3d Cir. 2009)).

[3] *Id.* (citing *Maia v. Aetna, Inc.* 221 F.3d 472, 500 (3d Cir. 2000)).

[4] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

**B.      City Smiles Alleges Valid Sherman Act Section 2 Claims.**

A Sherman Act § 2 claim has two elements: "(1) the possession of monopoly power in the relevant market and (2) the willful acquisition or maintenance of that power. . . ."[5] In addition, a plaintiff must also allege and prove injury.[6] City Smiles alleges two violations of the Sherman Act § 2: **Count I**, that Align leveraged its monopoly power in the Scanner market to maintain its monopoly power in the Aligner market (D.I. 1 ¶¶ 104-113), and **Count II**, that Align has leveraged its monopoly power in the Aligner market to maintain its monopoly power in the Scanner market (D.I. 1 ¶¶ 114-123).

**1.      Align has monopoly power in the Scanner and Aligner markets.**

The Complaint alleges that Align has monopoly power in two relevant product markets: (1) **Scanners**: "the market for hand-held digital intra-oral scanners used to generate scans to order Aligners" (D.I. 1 ¶ 91); and (2) **Aligners**: "custom-manufactured, transparent, removable dental aligners made from clear plastic or similar materials" (D.I. 1 ¶ 85). Monopoly power is "the ability [of a firm] to control prices and exclude competition in a given market."[7] A plaintiff can establish monopoly power through direct evidence (*e.g.* of supracompetitive prices and restricted output), or through indirect (or "circumstantial") evidence that a firm possessed a predominant share of a properly defined "relevant market." *Broadcom*, 501 F.3d at 307.

"The outer boundaries of a product market are determined by the reasonable interchangeability of use or the cross-elasticity of demand between the product itself and

---

[5] *LePage's, Inc. v. 3M*, 324 F.3d 141, 149 (3d Cir. 2003) (*en banc*) (quoting *United States v. Grinnell Corp.*, 384 U.S. 563 (1966)).

[6] *W. Penn Allegheny Health Sys., Inc. v. UPMC*, 627 F.3d 85, 101 (3d Cir. 2010); *Pfizer Inc. v. Johnson & Johnson*, 333 F. Supp. 3d 494, 501 (E.D. Pa. 2018).

[7] *Grinnell Corp.*, 384 U.S. at 570-71; *Broadcom Corp. v. Qualcomm Inc.*, 501 F.3d 297, 306-07 (3d Cir. 2007); *Mylan Pharms. Inc. v. Warner Chilcott Pub. Ltd. Co.*, 838 F.3d 421, 434 (3d Cir. 2016) (citations omitted).

substitutes for it."[8] Reasonable interchangeability is not defined, as Align suggests, solely by

whether braces or silicone molds can be used instead of Aligners. "In assessing whether products

are within the relevant market, the jury must not only consider whether the products are

functionally similar but also whether the products are economically interchangeable. That is,

there must be cross-price elasticity of demand."[9]

One standard test for cross-price elasticity asks whether a "small but significant

nontransitory increase in price" (or "SSNIP") will cause customers to substitute one product for

another.[10] Once the relevant market is defined, "the existence of monopoly power may be

inferred from a predominant share of the market."[11] A market share of 75% is "more than

---

[8] *Brown Shoe Co. v. United States*, 370 U.S. 294, 325 (1962). Determining the relevant product market is "a fact-sensitive issue that is not appropriately decided on a motion to dismiss." *Loestrin 24 Fe*, 261 F. Supp. 3d 307, 328-29 (D.R.I. 2017); *see also E. I. du Pont de Nemours & Co. v. Kolon Indus.*, 637 F.3d 435, 443 (4th Cir. 2011) (market definition "deeply fact-intensive inquiry").

[9] Am. Bar Ass'n, Model Jury Instructions in Civil Antitrust Cases (2016), Ch. 1, Instruction A-4, note 2 (citing cases, including *SmithKline Corp. v. Eli Lilly & Co.*, 575 F.2d 1056, 1065 (3d Cir. 1978)). *See also, e.g.*, *Flovac, Inc. v. Airvac, Inc.*, 817 F.3d 849, 854 (1st Cir. 2016) (relevant market defined by "extent to which consumers will change their consumption of one product in response to a price change in another, *i.e.* the cross-elasticity of demand") (internal quotations and citations omitted); *Gorlick Distrib. Ctrs., LLC v. Car Sound Exhaust Sys., Inc.*, 723 F.3d 1019, 1025 (9th Cir. 2013) (requiring "cross-elasticity of demand"); *In re Nexium (Esomeprazole) Antitrust Litig.*, 968 F. Supp. 2d 367, 387-88 (D. Mass. 2013) ("The reasonable interchangeability of a set of products is not dependent on the similarity of their forms or functions; instead, '[s]uch limits are drawn according to the cross-elasticity of demand for the product in question….'").

[10] *See FTC v. H.J. Heinz Co.*, 246 F.3d 708, 718 (D.C. Cir. 2001) (market definition "focuses solely on demand substitution factors," that is, whether consumers will switch between two products "in response to a small but significant and nontransitory increase in price" for one of them) (citations omitted); *see also* Department of Justice (DOJ) and Federal Trade Commission (FTC), *Horizontal Merger Guidelines* § 1.11 (Aug. 19, 2010).

[11] *United States v. Dentsply Int'l, Inc*., 399 F.3d 181, 187 (3d Cir. 2005); *see also Weiss v. York Hosp*., 745 F.2d 786, 827 (3d Cir. 1984) ("primary criterion used to assess the existence of monopoly power is … market share").

adequate to establish a prima facie case of power." *Dentsply*, 399 F.3d at 188. City Smiles alleges ample direct and indirect evidence of monopoly power.

### a.   City Smiles alleges ample direct evidence of monopoly power.

Monopoly power may be proven directly through evidence of supracompetitive prices, restricted output, and high profit margins. *Broadcom*, 501 F.3d at 306-07 & n.3; *Mylan Pharms.*, 838 F.3d at 434. City Smiles alleges that (1) prices for Scanners and Aligners were supracompetitive (D.I. 1 ¶¶ 7, 13, 42, 77, 84, 90); (2) output was restricted by the prevention of entry of potential rivals and by the limitations forced on customers by the termination of the 3Shape interoperability agreement (D.I. 1 ¶¶ 68, 73, 74); and (3) Align earned extremely high profit margins on both Aligners and Scanners. (D.I. 1 ¶ 42.) These allegations suffice.

### b.   City Smiles alleges ample indirect evidence of monopoly power.

The Complaint alleges two relevant markets—the Scanner and Aligner markets—and that Align possesses more than 80% market share in each market. This is more than sufficient to plead monopoly power.

### (1)   Other scanners and silicone molds are neither functional nor economic substitutes for Scanners such as Trios and iTero.

City Smiles defined the market for Scanners as "the market for hand-held digital intra-oral scanners used to generate scans to order Aligners." (D.I. 1 ¶ 91.) The only products in this market are the iTero and 3Shape's Trios. Other scanners and traditional silicone molds are neither functional nor economic substitutes.

First, City Smiles alleges that other scanners are not functional substitutes because, for example, "3M's True Definition and Dentsply Sirona's CEREC Omnicam scanners are designed to scan individual teeth for crowns and other localized dental restorative work, and they are not as suitable for performing a full-mouth scan for the customized design of a patient's Aligners."

(D.I. 1 ¶ 95.) Similarly, "[s]ilicone molds are not adequate or reasonable substitutes for Scanners" because "[t]hey are unpleasant for patients, and they provide lower accuracy than Scanners." (D.I. 1 ¶ 98.)

Second, City Smiles alleges that "[a] small but significant and non-transitory artificial inflation in the price of Scanners would not cause any significant number of consumers to purchase other potentially substitutable products, including 3M's True Definition and Dentsply Sirona's CEREC Omnicam scanners, instead, so as to make the artificial price inflation unprofitable." (D.I. 1 ¶ 98.) This is sufficient to allege that products other than iTero and Trios are not economic substitutes, and thus, are not in the relevant product market.[12]

Third, City Smiles alleges that Align has a greater than 80% market share in the Scanner market, and thus has sufficient market share to infer monopoly power.

### (2) Traditional wire braces are neither economic nor functional substitutes for Aligners.

City Smiles has defined the market for Aligners as "custom-manufactured, transparent, removable dental aligners made from clear plastic or similar materials." (D.I. 1 ¶ 85.) Traditional wire braces are neither functional nor economic substitutes for Aligners. Align itself has publicly acknowledged it had no competition when it first came to market. Indeed, although wire braces were around for years before Aligners, Align's CEO stated that Align had years "to really iterate and learn without the outside influence of other competitors." (D.I. 1 ¶ 7.)

First, metal braces are not functionally interchangeable with Aligners:

> Metal braces are not a reasonable substitute for Aligners. Aligners are used for patients with moderate tooth misalignment, or who cannot receive metal

---

[12] Align argues, incorrectly, that the Complaint is contradictory because it notes that silicone molds and other scanners are, to some degree, substitutes. (D.I. 6 at 13-14.) But as discussed above, the Complaint makes clear that they are neither functional substitutes nor, more to the point, economic substitutes for the Scanners that are designed for use with Aligners.

braces due to activities in which they are involved, such as certain sports. Metal braces are used for patients with severe tooth misalignment, for whom Aligners would not be sufficient for proper treatment. Metal braces are also far more uncomfortable, typically take a longer period for treatment to complete, require patients to avoid certain foods, and require repeated visits to an orthodontist. (D.I. 1 ¶ 88.)[13]

Second, metal braces are not economic substitutes with Aligners because "[a] significant and non-transitory artificial inflation of the price of Aligners would not cause any significant number of consumers to purchase other potentially substitutable products, including metal braces, instead, so as to make such price inflation unprofitable." (D.I. 1 ¶ 89.) Accordingly, the Complaint alleges that Aligners do not exhibit cross-price elasticity with braces and are not part of the same product market.[14]

Third, City Smiles alleges that Align has a greater than 80% share of the Aligner market, which is more than enough to infer monopoly power in the Aligners market.

## 2. Align engaged in anticompetitive, exclusionary conduct.

The Complaint sufficiently alleges that Align engaged in exclusionary conduct to leverage its monopoly power in one market to maintain or increase its monopoly power in the other. "'Anticompetitive conduct' can come in too many different forms, and is too dependent upon context, for any court or commentator ever to have enumerated all the varieties." *LePage's*, 324 F.3d at 152 (citation omitted). In general, "a firm engages in anticompetitive conduct when it

---

[13] A plausible allegation that products have different characteristics and distinct customer bases is sufficient to support a finding of separate markets. *See Brown Shoe*, 370 U.S. at 325 (different product characteristics and distinct customer bases support finding of separate markets); *CAE Inc. v. Gulfstream Aerospace Corporation*, 203 F. Supp. 3d 447, 453 (D. Del. 2016) (Stark, J.) ("Different models of flight simulators . . . also have different product characteristics and different customer bases—all of which makes plausible the allegation that the relevant market is as Plaintiffs propose").

[14] Align cites *Lifewatch Servs v. Highmark*, 902 F.3d 323 (3d Cir. 2018), but it does not support dismissal and indeed reversed the district court's dismissal on relevant market grounds, noting "courts are cautious before dismissing for failure to define a relevant market." *Id.* at 337.

attempts to exclude rivals on some basis other than efficiency" or competes "on some basis other than the merits." *W. Penn Allegheny Health Sys*, 627 F.3d at 108-09.

Courts in this Circuit (and elsewhere) have recognized "the impropriety of monopoly leveraging, *i.e.*, the use of monopoly power in one market to strengthen a monopoly share in another market."[15] Courts also recognize that "[b]undling is a form of recognized unlawful exclusionary conduct" and "can constitute willful maintenance . . . , especially where it enables a seller to leverage its monopoly power in one market to impair competition in another market."[16]

Align created a "closed" system bundle for its Scanner and Aligner products. (D.I. 1 ¶¶ 13, 52, 81.) Dental practices who wish to use Align's iTero Scanner to order *non*-Invisalign Aligners must pay conversion fees and commit significant staff time and resources to convert the scans to a useable format, which often results in loss of quality. (*Id.*) These barriers increase the cost of using non-Align scanners. Align also restricts the ability to use other scanners to order Invisalign by requiring non-standard file formats and unnecessary "interoperability agreements," without which a competing Scanner cannot be used to order Aligners. (D.I. 1 ¶¶ 13, 53, 68.)

While bundling traditionally involves "discounts" to encourage the purchase of the bundle, Align has instead chosen to impose only penalties on any customer that wants to break the bundle by using competing products. (D.I. ¶¶ 2, 11, 13, 77, 99, 103.) Further, when 3Shape, who sells the only other Scanner suitable to order Aligners, would not agree to restrictive conditions to support Align's monopoly power in the Aligner market, Align cut off 3Shape's

---

[15] *Syncsort Inc. v. Innovative Routines Intern.*, No. 04-cv-3623, 2005 WL 1076043 (D.N.J. May 6, 2005) (citing *Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451, 483 (1992)); *see also Fineman v. Armstrong World Industries, Inc.*, 980 F.2d 171, 206 (3d Cir. 1992); *IQVIA Inc. v. Veeva Systems Inc.*, 17-cv-00177, 2018 WL 4815547, at *4 (D.N.J. Oct. 3, 2018) (citing *Hewlett-Packard Co. v. Arch Assocs. Corp.*, 908 F. Supp. 265, 272 (E.D. Pa. 1995).

[16] *Castro v. Sanofi Pasteur Inc.*, 134 F. Supp. 3d 820, 843, 846 (D.N.J. 2015); *see also SmithKline*, 575 F.2d at 1061-62.

access to Invisalign, severely restricting 3Shape's ability to compete in the Scanner market, and reducing choice in both markets. (D.I. 1 ¶¶ 16-18.) This was not competition on the merits—as shown by Align's willingness to forgo short-term profits on Aligners—but rather, the use of Align's market dominance to exclude rivals to maintain monopoly power in both markets, and ultimately, to maintain supracompetitive prices in both markets. (D.I. 1 ¶¶ 82-83.)

### a.   Monopoly leveraging is well-recognized exclusionary conduct.

Align asserts that "[l]everaging is not a valid theory of exclusionary conduct after the Third Circuit's decision in *Advo, Inc. v. Philadelphia Newspapers.* 51 F.3d 1191 (3d Cir. 1995)." (D.I. 6 at 9-10). Align is mistaken, and even cites to a decision from this District that came *after Advo* that *upheld a monopoly leveraging claim*.[17] Indeed, *Delaware Health* is just one of several cases in the Third Circuit explicitly holding that monopoly leveraging *can* violate Section 2 of the Sherman Act, including an October 2018 decision denying a motion to dismiss a monopoly leveraging claim.[18] And *Advo* did not eliminate or narrow the Third Circuit's *Fineman* decision, which established the elements of a monopoly leveraging claim. *Fineman*, 980 F.2d at 206.[19]

---

[17] *See Delaware Health Care v. MCD Holding Co.* 893 F. Supp. 1279 (D. Del. 1995). Align misreads the relevance of *Delaware Health*, which supports these claims. *See infra* at 12-13.

[18] *IQVIA Inc. v. Veeva Systems Inc.*, 17-cv-00177, 2018 WL 4815547 (D.N.J. Oct. 3, 2018). *See also, e.g., Syncsort Inc. v. Innovative Routines Intern.*, No. 04-cv-3623, 2005 WL 1076043 (D.N.J. May 6, 2005); *Yeager's Fuel, Inc. v. Penn. Power & Light Co.*, 953 F. Supp. 617 (E.D. Pa. 1997); *Hewlett-Packard Co. v. Arch Assocs. Corp.*, 908 F. Supp. 265 (1995).

[19] In *Advo*, the plaintiff's leveraging claim failed because the defendant did not have a monopoly in the leveraged market, and the court found that there was no "dangerous probability" of defendant gaining one based on its conduct. *Advo*, 51 F.3d at 1200, 1205. Additionally, the court found that the low barriers to entry in the leveraged market confirmed that defendant was unlikely to gain monopoly power. *Id.* at 1201-03. Finally, the alleged anticompetitive conduct in *Advo* was unilateral price discounting, which the court found needed to be treated with particular caution because lower prices often benefit consumers. *Id.* at 1203. City Smiles alleges monopoly power in both the Scanner and Aligner markets, and thus, has no need to allege a dangerous probability of achieving a monopoly. (D.I. 1 ¶¶ 2, 84-98, 106, 116.) The barriers to entry for potential competitors are high in both the Aligner and Scanner markets. (D.I. 1 ¶¶ 12, 67, 76, 87, 93.) And City Smiles does not allege that Align's anticompetitive conduct consisted only of

### b.     Align's "closed system" of Aligners and Scanners is exclusionary.

#### (1)     Count I: Align leveraged Scanner monopoly power to maintain and enhance Aligner monopoly power.

City Smiles alleges in Count I that Align leveraged its monopoly power in the Scanner market to maintain its monopoly power in the Aligner market by programming its market dominant Scanners to work efficiently only with its market dominant Aligners, and thereby creating a "closed system" bundle with its Aligners. Align contends that this classic form of exclusionary conduct is not actionable under *Delaware Health*. (D.I. 6 at 10-11.) Align is wrong.

First, Align argues, incorrectly, that *Delaware Health* narrowed leveraging claims to situations where a defendant "steers" a customer away from a competitor. (D.I. 6 at 9-10.) Not so. Neither *Delaware Health*, nor other monopoly leveraging cases in the Third Circuit following that decision, establish such a limitation. *See supra* n.18 (collecting cases).

Second, even if "steering" were required, the Complaint alleges it. The relevant customers here are dental practices, not patients, and the Complaint alleges that the design of the "closed system" bundle of Scanners and Aligners, as well as the termination of the interoperability agreement, have steered dental practices away from competing Aligners and Scanners. *That was the point of the conduct*. As the Complaint alleges, this scheme allowed Align to maintain (and increase) monopoly power in both markets, and to charge supracompetitive prices. As alleged, Align was willing to sacrifice short-term profits in terminating its long-standing, profitable relationship with 3Shape because it knew that it would reap greater rewards by steering customers away from rivals and thus blocking rivals' ability to compete. (D.I. 1 ¶¶ 16, 78.) *Delaware Health* supports City Smiles' claims.

---

unilateral price discounting. Indeed, the opposite is true—Align imposed substantial penalties on dental practices who "break the bundle" and use either a Scanner or Aligners from a competitor. (D.I. 1 ¶ 2, 11, 52, 103, 107.) In short, *Advo* is inapposite.

### (2)   Count Two: Align leveraged Aligner monopoly power to maintain and enhance Scanner monopoly power.

Align asserts that Count II—alleging that Align leverages its Aligner monopoly power to maintain or enhance its monopoly power in the Scanner market—fails because it does not sufficiently allege exclusionary conduct. (D.I. 6 at 12.) Align is wrong.[20]

First, Align suggests that each element of anticompetitive conduct must constitute a freestanding antitrust claim, but that is not the law. To state a monopoly leveraging claim, the alleged anticompetitive conduct must merely impair competitors on some basis other than "superior efficiency." *Yeager's Fuel*, 953 F. Supp. at 644. For example, in *Arch Associates*, the court found that the defendant's decision to rearrange its distribution system to leverage its monopoly in one market into a monopoly in a second market could form the basis for a monopoly leveraging claim. 908 F. Supp. at 272. Thus, while a business may ordinarily arrange its distribution system how it sees fit, when it uses that change to leverage one monopoly into another, "[i]f proven, this could comprise a § 2 violation." *Id.*[21]

---

[20] Although not clear from Align's motion, to the extent Align asks the Court to consider each allegation of anticompetitive conduct separately, that is not the law. "Courts must look to the monopolist's conduct taken as a whole rather than considering each aspect in isolation." *LePage's*, 324 F.3d at 162; *see also Cont'l Ore Co. v. Union Carbide & Carbon Corp.*, 370 U.S. 690, 699 (1962) ("plaintiffs should be given the full benefit of their proof without tightly compartmentalizing the various factual components and wiping the slate clean after scrutiny of each"); *Rochester Drug Coop. v. Braintree Labs.*, 712 F. Supp. 2d 308, 319 (D. Del. 2010) ("The court need not, and declines to, analyze whether each facet of this scheme constitutes a separate antitrust violation." (citation omitted)).

[21] Similarly, in *Yeager's Fuel*, the court found the defendant's contracts with homebuilders, which required new construction to have all electric heat, were exclusionary, even though they applied to a small percentage of the market, because they were used to exclude rivals on some basis other than efficiency. 953 F. Supp. at 642-44. And "[c]onsumers suffered from this conduct because [defendant] locked new homeowners into inefficient and expensive sources of heat, restraining their ability to obtain less costly and more efficient heating systems." *Id.* at 644. Thus, while exclusive agreements might be legal—even desirable—in certain circumstances, they are illegal when used to leverage a monopoly in one market into another market.

Second, Align asserts that City Smiles cannot base its monopoly leveraging claim only on "an obligation for Align to maintain interoperability with 3Shape." (D.I. 6 at 12.) City Smiles alleges Align purposely configured its Scanners and Aligners to create a "closed system" product bundle to monopolize the Aligner and Scanner markets. (D.I. 1 ¶¶ 11-13, 52, 77.) City Smiles also alleges that this excluded potential and actual rivals in both markets. (*Id.*) Further, as alleged, Align controls access to this closed system through interoperability agreements and was willing to sacrifice profits in order to exclude 3Shape, and harmed consumers when it did so. (D.I. 1 ¶ 16, 78.) Thus, even if City Smiles had merely alleged that Align's design was the sole means of exclusion—and that is not the case—that would be sufficient under Section 2.

Contrary to Align's suggestion (D.I. 6 at 10), there is no blanket immunity from antitrust liability for product design decisions. Changes by a monopolist that exclude a competitor with no offsetting procompetitive justifications are anticompetitive and can violate Section 2.[22]  Thus, when a design decision does not make the monopolist's product more desirable to consumers, but rather, discourages the use of a rival's product, that can violate Section 2. *Id.*[23]

Further, City Smiles' Count II leveraging claim is not based solely on Align's decision to revoke the interoperability agreement with 3Shape. To be sure, that was an important step in

---

[22] *See United States v. Microsoft Corp.*, 253 F.3d 34, 65-67 (D.C. Cir. 2001) (noting that "[j]udicial deference to product innovation [] does not mean that a monopolist's product design decisions are per se lawful" and that certain design changes can "constitute exclusionary conduct, in violation of § 2"); *In re Keurig Green Mountain Single Serve Coffee Antitrust Litig.*, No. 14-md-2542, 2019 WL 1789789, at *19 (S.D.N.Y. Apr. 22, 2019) (same).

[23] *See also New York ex rel. Schneiderman v. Actavis PLC*, 787 F.3d 638, 653 (2d Cir. 2015) ("[W]hen a monopolist combines product withdrawal with some other conduct, the overall effect of which is to coerce consumers rather than persuade them on the merits and to impede competition, its actions are anticompetitive under the Sherman Act.") (citations omitted); *Abbott Labs. v. Teva Pharms. USA, Inc.*, 432 F. Supp. 2d 408, 421-22 (D. Del. 2006) (holding where a design could be anticompetitive where it accomplished "not by making [a product] more attractive to consumers but, rather, by discouraging [the distribution of] rival products") (quoting *United States v. Microsoft Corp.*, 253 F.3d at 65)).

Align's scheme, and it directly injured 3Shape, Align's customers (class members here), and competition more generally. City Smiles also alleges that Align configured its Aligner manufacturing process not to accept the industry standard STL files and to require dental practices who use a competing Scanner to undergo a burdensome and costly conversion process to do so. (D.I. 1 ¶¶ 68, 80, 117.) Align has thus created a product bundle by penalizing dental practices that wish to use a non-Align product to order an Align product. Bundling is a well-recognized form of exclusionary conduct. *See infra* at 17.

Finally, even if City Smiles had alleged only a refusal to deal as the predicate for its monopoly leveraging claim, that would nevertheless suffice. "While [the defendant] argues that a 'refusal to deal' with rivals is not prohibited under the Sherman Act, courts have held that it is anticompetitive when there is an 'inference that [a] monopolist made a deliberate effort to discourage its customers from doing business with its smaller rival.'"[24] Such an inference may be drawn where, as here, a monopolist terminates a long-standing agreement for mutual benefit and, in so doing, is willing to forego short-run benefits to reduce competition in the market.[25] Finally, the Supreme Court has recognized that consumer harm is an appropriate focus in a refusal to deal case, and that lack of consumer access to the superior quality product is an anticompetitive harm. *Aspen Skiing*, 472 U.S. at 605-06.

---

[24] *IQVIA*, 2018 WL 4815547, at *3 (quoting  *Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*, 472 U.S. 585, 610 (1985)) (upholding plaintiff's monopoly leveraging claim based, in part, on refusal to deal).

[25] *See Aspen Skiing*, 472 U.S. at 604, 608-09; *Broadcom*, 501 F.3d at 316; *Covad Comms. Co. v. Bell Atlantic Corp.*, 398 F.3d 666, 676 (D.C. Cir. 2005) ("[A] 'predatory' practice is one in which a firm sacrifices short-term profits in order to drive out of the market or otherwise discipline a competitor."); *IQVIA*, 2018 WL 4815547, at *3. Align cites *Trinko* to support its argument that there is no refusal to deal claim under Section 2, but *Trinko* recognizes that "[u]nder certain circumstances, a refusal to cooperate with rivals can constitute anticompetitive conduct and violate § 2." *Verizon Comm'ns v. Law Offices of Curtis V. Trinko*, 540 U.S. 398, 408 (2004). Indeed, *Trinko* endorses the rule from *Aspen Skiing*. *Id.* at 408-09.

City Smiles alleges that Align had a long-standing and profitable relationship with 3Shape before terminating the interoperability agreement. (D.I. ¶¶ 14, 55-65.) City Smiles also alleges that when 3Shape refused to help Align protect its Aligner monopoly, Align decided to cut off 3Shape's access and forego short-run profits to protect Align's monopoly on Aligners because it knew that protecting its Aligner monopoly would ultimately be more lucrative. (D.I. ¶¶ 16, 78.) And City Smiles alleges that Align continues to work with 3Shape outside of the United States, underscoring the fact that the revocation of interoperability was not necessary and was in fact rooted in anticompetitive intent. (D.I. ¶ 66.) These allegations are sufficient to state a refusal to deal claim, as a standalone claim or as part of a broader Section 2 claim.

### c.   Align's bundle is exclusionary.

City Smiles alleges that Align purposely configured its Scanners and Aligners to create a *de facto* product bundle. "Bundling is a form of recognized unlawful exclusionary conduct." *Castro*, 134 F. Supp. 3d at 843. A product bundle can be anticompetitive "when offered by a monopolist" because it "may foreclose portions of the market to a potential competitor who does not manufacture an equally diverse group of products and who therefore cannot make a comparable offer." *LePage's*, 324 F.3d at 155. Bundling of a monopoly product with another product to foreclose competition from rivals constitutes "an exploitation of the seller's monopoly power," and violates Section 2 of the Sherman Act. *Id.* at 156. A bundle is anticompetitive when it forecloses rivals from a substantial portion—typically 40% or more—of the relevant market.[26]

City Smiles alleges that to lock-in customers and exclude rivals, Align configured its Scanners and Aligners to create a *de facto* bundle. (D.I. 1 ¶¶ 2, 11, 13, 52, 103.) This punishes customers who "break the bundle" and use rival products by imposing costs in the form of

---

[26] *Eisai Inc. v. Sanofi Aventis U.S., LLC*, 821 F.3d 394, 404 n.31 (3d Cir. 2016).

conversion fees, staff time, and loss of quality (among other things).[27] (*Id.*) This conduct

prevents rivals from competing on equal footing against Align's monopoly power, and as

alleged, has foreclosed Align's rivals from a substantial portion of the relevant market. (D.I. 1 ¶¶

99-103). These allegations are sufficient to state a standalone claim for monopoly bundling.

> ### 3.    Align's conduct harmed consumer welfare.

The Complaint alleges that Align's conduct reduced competition in the Aligner and

Scanner markets and thus injured customers in the form of higher prices for Aligners and

Scanners, as well as reduced output and choice. (D.I. 1 ¶¶ 2, 11, 13, 68-69, 77, 82-83.) Those are

injuries the antitrust laws were intended to prevent,[28] and Align does not challenge this point.

## C.    This Court Is the Correct Forum.

Align asserts that a forum selection clause in City Smiles' iTero Scanner purchase

agreement requires transfer of this action to California court. (D.I. 6 at 18-20). Align is wrong.

First, the contractual forum selection clause does not apply because the claims neither

arise from the contract nor require interpretation of the contract that contains the forum selection

clause.[29] Indeed, where the contract "is merely one of the final manifestations of [the parties'

---

[27] While the conduct in *LePage's* and *Castro* involved bundled *discounts*, where the customer was threatened with the loss of discounts for breaking the bundle, the conduct alleged here is even more plainly harmful because the customer gets no discount with the bundle and, instead, faces a penalty for breaking the bundle.

[28] *Gulfstream III Assocs., Inc. v. Gulfstream Aerospace Corp.*, 995 F.2d 425, 429 (3d Cir. 1993); *Bradburn Parent/Teacher Store, Inc. v. 3M*, No. 02-cv-7676, 2000 WL 34003597, at *2-4 (E.D. Pa. Jul. 25, 2003) (paying higher prices caused by monopolization is antitrust injury).

[29] *See, e.g.*, *Xiao Wei Yang Catering Linkage in Inner Mongolia Co., LTD. v. Inner Mongolia Xiao Wei Yang USA, Inc.*, 150 F. Supp. 3d 71, 79-81 (D. Mass. 2015); *Am. Airlines, Inc. v. Travelport Ltd.*, No. 11-cv-244, 2011 WL 3290366, at *1-2 (N.D. Tex. Jul. 26, 2011) (forum selection clause did not apply to Sherman Act claims that do not arise out of contract); *J.R.S., Inc. v. Panduit Corp.*, No. 08-653, 2009 WL 37601, at *3-4 (N.D. Okla. Jan. 6, 2009) (forum selection clause did not apply to tort claims). Courts have also ruled that arbitration clauses do not apply to antitrust claims that do not relate to the parties' obligations under the agreement. *See CardioNet, Inc. v. Cigna Health Corp.*, 751 F.3d 165, 175 (3d Cir. 2014) (claims not arbitrable

ongoing business] relationships," the court should not treat the claim as arising out of the contract and should not apply the forum selection clause.[30] City Smiles' claims arise from Align's scheme to impair competition and maintain monopoly power in two product markets. The contracts between Align and its customers are not the mechanism of exclusion, and the injury here arises from the overcharge. The forum selection clause does not apply.[31]

Align also incorrectly argues that City Smiles' claim ultimately arises under the contract because but for the purchase under the agreement, City Smiles would not have incurred the overcharge. (D.I. 6 at 20.) This is wrong. The Third Circuit has held that this confuses but-for causation with "arising under."[32] City Smiles' claims arose the moment it paid overcharges on Aligners and on its Scanner,[33] and these claims would thus exist regardless of any contracts signed at the time of purchase. Indeed, Align only raises a forum selection clause in the Scanner contract, and does not point to any such clause in an Aligner purchase agreement, underscoring that the overcharge claims arise irrespective of any agreement between the parties.[34]

---

because (1) "resolution of [plaintiffs'] claims does not require construction of, or even reference to, any provision in the Agreement [containing the arbitration clause]"; and (2) whether defendant "performed its obligations under the Agreement has no bearing" on the claims). *See also AlliedSignal, Inc. v. B.F. Goodrich Co.*, 183 F.3d 568, 573 (7th Cir. 1999).

[30] *Gen. Envtl. Sci. Corp. v. Horsfall*, 753 F. Supp. 664, 668 (N.D. Ohio 1990), *aff'd* 25 F.3d 1048 (6th Cir. 1994) ("As Plaintiff's claims do not arise directly from the [contract], Plaintiff could not have foreseen being bound by its forum selection clause in bringing these claims.").

[31] *Atlantic Marine* is inapposite because in that case the dispute was "a dispute about payment under the subcontract" that contained the forum selection clause. *Atl. Marine Constr. Co. v. U.S. Dist. Court for the W. Dist. of Tex.*, 571 U.S. 49, 53 (2013). City Smiles' claims here do not arise under the Scanner purchase agreement.

[32] *Reading Health Sys. v. Bear Stearns & Co.*, 900 F.3d 87, 98-100 and n.59 (3d Cir. 2018) (the Third Circuit rejected defendant's argument that *but for* the agreement creating the customer relationship, there would be no right to arbitrate).

[33] *In re Nexium Antitrust Litig.*, 777 F.3d 9, 27 (1st Cir. 2015).

[34] Align's cases are not controlling. Align cites *In re Titanium Dioxide Antitrust Litig.*, 962 F. Supp. 2d 840, 857 (D. Md. 2013), to suggest that but for the contract, City Smiles would not

Second, even were the Court to look to the clause itself, the context makes clear that it applies to claims that arise from the agreement itself.[35] The provision containing the forum selection clause, titled "MISCELLANEOUS," is completely focused on the interpretation and enforcement of "this Agreement," with references to the agreement's effective date, that it is the "entire agreement," how it may be executed or modified, and that California law should be used to interpret it. (D.I. 6, Ex. 2.) Thus, in context, the forum selection clause should be read to apply to disputes arising under the "this Agreement." These antitrust claims arise independently of the agreement.[36]

3Shape's related antitrust case against Align is already proceeding in this District and will involve largely identical facts, witnesses, and discovery. Fairness and judicial economy favor keeping the case here, in City Smiles' chosen forum.

---

have purchased a Scanner and thus would have no claim. But the Third Circuit has already rejected this reasoning. *Reading Health,* 900 F.3d at 100 n. 59 ("it improperly equates the meaning of 'arising out of' with the concept of but-for causation"). And *Titanium Dioxide* relied primarily on *Bense v. Interstate Battery Sys. of Am.*, 683 F.2d 718 (2d Cir. 1982), but that decision turned on the fact that "the gist of Bense's claim is that Interstate wrongfully terminated the agreement." *Id.* at 720. Interpretation of the agreement was necessary in *Bense*, and that is not the case here. *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 531 (3d Cir. 2004) does not support Align's argument. While it is true that "antitrust injury is predicated on . . . *overcharge* that creates the injury here, not the purchase agreement.

[35] *Wexler v. AT&T Corp.*, 211 F. Supp. 3d 500, 504 (E.D.N.Y. 2016) (arbitration clause "must be judged according to 'what an objective, reasonable person would have understood [them] to convey'" and court rejects overbroad interpretation to extend beyond "disputes connected in some way to the [agreement]").

[36] Align cites *Valspar v. E.I. DuPont de Nemours and Co.*, 15 F. Supp. 3d 928 (D. Minn. 2014) to argue that the contract is relevant. *Valspar* is inapposite because it endorses the "but for reasoning" the Third Circuit rejected in *Reading Health*, and because it relies on the forum selection clause's application to claims "in respect of the transactions contemplated hereby," which the court took as extending the clause beyond contractual claims to any claim arising from the transactions. *Valspar*, at 933-4. The forum selection clause here, read in context, cannot reasonably be read to extend to claims beyond those that arise from the agreement.

## V.    CONCLUSION

For the foregoing reasons, Plaintiff City Smiles respectfully requests that the Court deny

Defendant Align's Motion to Dismiss or in the Alternative Transfer in its entirety.

Dated: April 26, 2019

*/s/ Jeffrey S. Goddess*
Jeffrey S. Goddess (No. 630)
Jessica Zeldin (No. 3558)
P. Bradford Deleeuw (No. 3569)
ROSENTHAL, MONHAIT & GODDESS, P.A.
919 N. Market Street
Suite 1401
P.O. Box 1070
Wilmington, DE 19899
(302) 656-4433
jgoddess@rmgglaw.com
jzeldin@rmgglaw.com
bdeleeuw@rmgglaw.com

John Radice
Daniel Rubenstein
Natasha Fernandez-Silber
Rishi Raithatha
RADICE LAW FIRM, P.C.
475 Wall Street
Princeton, NJ 08540
(646) 245-8502
jradice@radicelawfirm.com
drubenstein@radicelawfirm.com
nsilber@radicelawfirm.com
rraithatha@radicelawfirm.com

Eric L. Cramer
BERGER MONTAGUE PC
1818 Market Street, Suite 3600
Philadelphia, PA 19103
(215) 875-4604
ecramer@bm.net

Daniel J. Walker
BERGER MONTAGUE PC
2001 Pennsylvania Avenue, NW, Suite 300
Washington, DC 20006
(202) 559-9745
dwalker@bm.net

*Counsel for Plaintiff Simon and Simon, PC d/b/a City Smiles and the Proposed Class*